UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

_____

ACRISURE, LLC, a Michigan limited liability
Company,

      Plaintiff,

v.

MARC HUDAK, a resident of New York,

      Defendant.

Case No. 1:22-cv-17

Hon. Hala Y. Jarbou

**ANSWER TO COMPLAINT,
AFFIRMATIVE DEFENSES,
COUNTERCLAIMS AND JURY
DEMAND**

---

Jon M. Bylsma (P48790)
Timothy P. Monsma (P72245)
VARNUM LLP
Attorneys for Plaintiff
P.O. Box 352
Grand Rapids, MI 49501
(616) 336-6000
jmbysma@varnumlaw.com
tpmonsma@varnumlaw.com

Abby Pendleton (P55736)
Robert Dindoffer (P72319)
Isaac Sternheim (P77634)
THE HEALTH LAW PARTNERS
32000 Northwestern, # 240
Farmington Hills, MI 48334
(248) 996-8510
apendleton@thehlp.com
rdindoffer@thehlp.com
isternheim@thehlp.com

Robert C. Angelillo, Esq.
ARKIN SOLBAKKEN LLP
900 Third Avenue, 18th Floor
New York, New York 10022
(212) 333-0216
rangelillo@arkin-law.com
(Admission Pending)

*Attorneys for Defendant Marc Hudak*

---

**ANSWER TO COMPLAINT, AFFIRMATIVE DEFENSES,
COUNTERCLAIMS AND JURY DEMAND**

Marc Hudak, by and through his undersigned attorneys, hereby answers the Amended Complaint filed by Plaintiff Acrisure, LLC (the "Amended Complaint"), as follows:

1.     **Plaintiff, Acrisure, is a Michigan limited liability company with its principal placeof business in Grand Rapids, Michigan.**

**ANSWER:** Denies knowledge or information sufficient to form a belief with respect to the allegations contained in Paragraph 1 of the Amended Complaint.

2.     **Defendant, Marc Hudak ("Hudak"), is a resident of the State of New York, residingin Glen Cove, New York.**

**ANSWER:** Denies the allegations to the extent they purport to state a claim against him, but otherwise admits the allegations contained in Paragraph 2 of the Amended Complaint.

3.     **This Court has jurisdiction, as the amount in controversy exceeds $25,000.**

**ANSWER:** Avers that the allegations contained in Paragraph 3 of the Amended Complaint are statements of law to which no response is required and respectfully refers such allegations to the Court.

4.     **Pursuant to MCR 2.112(O), Acrisure verifies that this case involves a businessdispute as defined in MCL 600.8031.**

**ANSWER:** Avers that the allegations contained in Paragraph 4 of the Amended Complaint are statements of law to which no response is required and respectfully refers such allegations to the Court.

5.     **Venue is proper, as Acrisure does business in Kent County, Michigan.**

**ANSWER:** Denies knowledge or information sufficient to form a belief with respect to the allegation that Acrisure does business in Kent County and otherwise avers that the allegations

contained in Paragraph 5 of the Amended Complaint are statements of law to which no response is required and respectfully refers such allegations to the Court.

6.      **This case arises out of the breach of a settlement agreement and an employment agreement, both of which contained express, enforceable nonsolicitation and noncompetition restrictions.**

**ANSWER:** Denies the allegations to the extent they purport to state a claim against him, but otherwise denies knowledge or information sufficient to form a belief with respect to the allegations contained in Paragraph 6 of the Amended Complaint.

7.      **Acrisure, ("Acrisure") is a national insurance broker, with its headquarters locatedin Grand Rapids, Michigan.**

**ANSWER:** Denies knowledge or information sufficient to form a belief with respect to the allegations contained in Paragraph 7 of the Amended Complaint.

8.      **On March 1, 2019 Acrisure purchased the Whitmore Group, Ltd. ("Whitmore"), a New York-based insurance agency.**

**ANSWER:** Denies knowledge or information sufficient to form a belief with respect to the allegations contained in Paragraph 8 of the Amended Complaint.

9.      **Hudak began working with Whitmore in 2015, pursuant to the terms of a ProducerAgreement under which Hudak and Whitmore each owned fifty percent (50%) of the accounts Hudak serviced.**

**ANSWER:** Denies the allegations to the extent they purport to state a claim against him, but otherwise respectfully refers the Court to the document referred to in Paragraph 9 of the Amended Complaint for its true content.

10.      **Prior to Acrisure's purchase of Whitmore on March 1, 2019, Hudak had been an independent producer, not an employee.**

**ANSWER:** Denies the allegations to the extent they purport to state a claim against him, but otherwise avers that the allegations contained in Paragraph 10 of the Amended Complaint are statements of law to which no response is required and respectfully refers such allegations to the Court.

11.      **Contemporaneous with Acrisure's purchase of Whitmore, Whitmore purchased Hudak's book of business.**

**ANSWER:** Denies the allegations to the extent they purport to state a claim against him, but otherwise denies knowledge or information sufficient to form a belief with respect to the allegations contained in Paragraph 11 of the Amended Complaint.

12.      **Whitmore paid Hudak a total of $2,531,781.70 in order to include what had been Hudak's book of business among the assets Whitmore sold to Acrisure.**

**ANSWER:** Denies knowledge or information sufficient to form a belief with respect to the allegations contained in Paragraph 12 of the Amended Complaint.

13.      **As part of the March 1, 2019 transactions, Hudak also entered into an employmentagreement with Acrisure (the "Hudak Employment Agreement").**

**ANSWER:** Denies the allegations to the extent they purport to state a claim against him, but otherwise admits that he entered into an employment agreement with Acrisure on or about March 1, 2019 as alleged in Paragraph 13 of the Amended Complaint and respectfully refers the Court to the document referred to therein for its true content.

14.      **The Hudak Employment Agreement, entered into at the same time Hudak receivedin excess of $2,000,000 as part of the March 1, 2019 transactions, contains**

4

**restrictive covenants including nonsolicitation and noncompetition obligations. Among other things, these restrictionsprohibited Hudak from soliciting Acrisure's customers or employees, agents and contractors and from competing with Acrisure in any state in which Acrisure does business.**

**ANSWER:** Denies the allegations to the extent they purport to state a claim against him, but otherwise respectfully refers the Court to the document referred to in Paragraph 14 of the Amended Complaint for its true content.

15.     **All of the restrictive covenants in the Hudak Employment Agreement run for 2 years following the end of Hudak's employment with Acrisure.**

**ANSWER:** Denies the allegations to the extent they purport to state a claim against him, but otherwise respectfully refers the Court to the document referred to in Paragraph 15 of the Amended Complaint for its true content.

16.     **In addition to the transactions between Acrisure and Whitmore on March 1, 2019,Hudak also entered into a side letter agreement (the "Side Letter Agreement") with Whitmore President James Metzger ("Metzger").**

**ANSWER:** Denies the allegations to the extent they purport to state a claim against him, but otherwise denies knowledge or information sufficient to form a belief with respect to the allegations contained in Paragraph 16 of the Amended Complaint.

17.     **Acrisure was not a party to the Side Letter Agreement.**

**ANSWER:** Denies the allegations to the extent they purport to state a claim against him, but otherwise respectfully refers the Court to the document referred to in Paragraph 17 of the Amended Complaint for its true content.

18.     **During the course of the next year, Hudak made various allegations related to Metzger, the Side Letter Agreement, and Acrisure.**

**ANSWER:** Denies knowledge or information sufficient to form a belief with respect to the allegations contained in Paragraph 18 of the Amended Complaint.

19.     **On May 27, 2020, Hudak filed a lawsuit naming Acrisure, Whitmore and Metzgeras defendants related to Hudak's claims that the defendants had breached their various obligationsunder the agreements they had with him.**

**ANSWER:** Denies the allegations to the extent they purport to state a claim against him, but otherwise respectfully refers the Court to the document referred to in Paragraph 19 of the Amended Complaint for its true content.

20.     **That litigation, as well as any other claims that Hudak may have had against Metzger and Acrisure, was settled via a settlement agreement in September of 2020 (the "Settlement Agreement").**

**ANSWER:** Denies the allegations to the extent they purport to state a claim against him, but otherwise respectfully refers the Court to the document referred to in Paragraph 20 of the Amended Complaint for its true content.

21.     **As part of the Settlement Agreement, Hudak received a payment from Metzger, Hudak voluntarily choose to work out of a different Acrisure office to avoid having to work withMetzger, and Acrisure and Hudak agreed that Hudak's employment would:**

> **Continue pursuant to the terms of the Hudak Employment Agreement, the terms of which Hudak acknowledges are enforceable and based upon sufficient consideration, including, but not limited to, Paragraphs 8-14 covering Hudak's confidentiality obligations to Acrisure, the Restrictive Covenants, and Hudak's acknowledgement of the exclusive**

6

**jurisdiction of the Michigan federal or state courts.**

**ANSWER:** Denies the allegations to the extent they purport to state a claim against him, but otherwise respectfully refers the Court to the document referred to in Paragraph 21 of the Amended Complaint for its true content.

22.   **The Settlement Agreement is governed by Michigan law, and Hudak consented to exclusive jurisdiction in Michigan.**

**ANSWER:** Avers that the allegations contained in Paragraph 22 of the Amended Complaint are statements of law to which no response is required and respectfully refers such allegations to the Court.

23.   **Following the execution of the Settlement Agreement, Hudak began working out of another New York-based Acrisure office doing business as City Underwriting ("City").**

**ANSWER:** Denies knowledge or information sufficient to form a belief with respect to the allegations contained in Paragraph 23 of the Amended Complaint.

24.   **On August 24, 2021, Hudak resigned from Acrisure.**

**ANSWER:** Denies the allegations contained in Paragraph 24 of the Amended Complaint.

25.   **Despite his resignation and despite the fact he reaffirmed his obligations under the restrictive covenants in the Hudak Employment Agreement, Hudak has blatantly and intentionally violated those restrictive covenants by soliciting customers being serviced by both the Whitmore Acrisure office and the City Acrisure office and by otherwise competing against Acrisure.**

**ANSWER:** Denies the allegations contained in Paragraph 25 of the Amended Complaint.

26.     **Hudak has breached his contractual obligations under both the Hudak EmploymentAgreement and the Settlement Agreement.**

**ANSWER:** Denies the allegations contained in Paragraph 26 of the Amended Complaint.

27.     **Acrisure has been damaged by Hudak's breaches of the Hudak Employment Agreement and the Settlement Agreement.**

**ANSWER:** Denies the allegations contained in Paragraph 27 of the Amended Complaint.

28.     **In connection with his breaches of his restrictive covenants, Hudak has causedbusiness to leave Acrisure.  This lawsuit is the result.**

**ANSWER:** Denies the allegations contained in Paragraph 28 of the Amended Complaint.

## COUNT I – BREACH OF CONTRACT

29.     **The allegations in the preceding paragraphs are incorporated by reference as if fullyrestated herein.**

**ANSWER:** In response to Paragraph 29 of the Amended Complaint, repeats and realleges each and every response in the foregoing paragraphs as though fully set forth herein at length.

30.     **The Settlement Agreement and the Hudak Employment Agreement are valid,enforceable contracts.**

**ANSWER:** Denies the allegations to the extent they purport to assert a claim against him and otherwise avers that the allegations contained in Paragraph 30 of the Amended Complaint are statements of law to which no response is required and respectfully refers such allegations to the Court

31.     **Acrisure has fulfilled all of its obligations under the Settlement Agreement and theHudak Employment Agreement.**

**ANSWER:** Denies the allegations contained in Paragraph 31 of the Amended Complaint.

32. **In soliciting Acrisure's customers and in competing against Acrisure, Hudak has breached the Settlement Agreement and the Hudak Employment Agreement.**

**ANSWER:** Denies the allegations contained in Paragraph 32 of the Amended Complaint.

33. **As a result of Hudak's breaches, Acrisure has been damaged.**

**ANSWER:** Denies the allegations contained in Paragraph 33 of the Amended Complaint.

34. To the extent a response is required, denies the allegations to the extent they purport to assert a claim against him and otherwise respectfully refers the Court to the document referred to in the unnumbered preliminary paragraph of the Amended Complaint for its true content.

35. To the extent a response is required, denies the allegations to the extent they purport to assert a claim against him and otherwise denies knowledge or information sufficient to form a belief with respect to the allegations contained in Footnote Number 1 in the Amended Complaint.

36. To the extent a response is required, denies the allegations to the extent they purport to assert a claim against him and otherwise denies knowledge or information sufficient to form a belief with respect to the allegations contained in Footnote Number 2 in the Amended Complaint.

37. To the extent any allegation in the Amended Complaint is not responded to hereinabove, it is deemed denied.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which relief can be granted or for which the damages sought may be awarded.

### SECOND AFFIRMATIVE DEFENSE

The Claims in the Complaint are barred, in whole or in part, since the damages Plaintiff suffered, if any, were caused by its own actions and/or failures to act.

### THIRD AFFIRMATIVE DEFENSE

The Claims in the Complaint are barred by the doctrine of estoppel.

### FOURTH AFFIRMATIVE DEFENSE

The Claims in the Complaint are barred by the doctrine of waiver.

### FIFTH AFFIRMATIVE DEFENSE

The Claims in the Complaint are barred by virtue of Plaintiff's prior material breach of the applicable contract and/or its constructive termination of Mr. Hudak.

### SIXTH AFFIRMATIVE DEFENSE

The Claims in the Complaint are barred by the doctrine of unclean hands.

### SEVENTH AFFIRMATIVE DEFENSE

The Claims in the Complaint are barred to the extent that Plaintiff's damages, if any, were caused by third parties over whom Mr. Hudak had no control.

### EIGHTH AFFIRMATIVE DEFENSE

The Claims in the Complaint are barred since the restrictive covenants alleged therein are unreasonable and not intended to protect a legitimate business interest of Plaintiff.

### NINETH AFFIRMATIVE DEFENSE

The Claims in the Complaint are barred for the reasons set forth in the Counterclaims set forth below.

### TENTH AFFIRMATIVE DEFENSE

The Claims in the Complaint are barred, in whole or in part, by documentary evidence.

### ELEVENTH AFFIRMATIVE DEFENSE

The Claims in the Complaint are barred to the extent that this Court lacks personal jurisdiction over Mr. Hudak and/or to the extent service of process was not properly effected.

### TWELFTH AFFIRMATIVE DEFENSE

The Claims in the Complaint are barred to the extent they seek injunctive relief since Plaintiff does not and cannot demonstrate irreparable harm.

### THIRTEENTH AFFIRMATIVE DEFENSE

The Claims in the Complaint are barred for the reasons set forth in Mr. Hudak's brief and supplemental brief submitted in opposition to Plaintiff's application for a temporary restraining order.

Mr. Hudak reserves the right to assert and rely on such other applicable affirmative defenses currently unknown but that become apparent during the discovery proceedings in this matter and reserve the right not to pursue defenses if determined not to be applicable during the course of discovery proceedings in this matter.

## COUNTERCLAIMS

Counterclaim Plaintiff Marc Hudak ("Mr. Hudak"), by his undersigned attorneys as and for his Counterclaims against Plaintiff, hereby alleges as follows:

1.      Mr. Hudak is an individual who resides at 124 Highland Road, Glen Cove, New York 11542.

2.      Counterclaim Defendant Acrisure, LLC ("Acrisure") is a Michigan Corporation, authorized to do business in the State of New York.

3.      City Underwriting ("City") is a branch of Acrisure with a business address of 2001 Marcus Avenue, Suite W180, Lake Success, NY 11042.

4.      Non-party John Roe ("Roe") is an individual and a resident of the State of New York, County of Nassau, with a business address of 2001 Marcus Avenue, Suite W180, Lake Success, NY 11042.

5.      Roe is the Branch President of City.

## Preliminary Statement

6.      This is an action for money damages and declaratory judgment arising out of Acrisure's multiple material breaches of an employment contract between Mr. Hudak and Acrisure and Acrisure's constructive termination of Mr. Hudak.

7.      As set forth in further detail below, Acrisure has undermined and breached the applicable contract by, *inter alia*, failing and refusing to pay Marc for services rendered under the applicable agreement, failing and refusing to establish the infrastructure required to permit Mr. Hudak to perform the agreement, understating Mr. Hudak's compensation for services rendered under the applicable agreement and continually undermining Mr. Hudak's ability to

perform the applicable agreement by misrepresenting critical facts in an attempt to induce Mr. Hudak to breach such agreement.

8.      Finally, and most egregiously, Acrisure demanded that Mr. Hudak enter into an amendment to the existing contract, which amendment would significantly reduce his compensation, without consideration, and have refused to pay Mr. Hudak commissions he has already earned under the contract until he executes the amendment.

9.      These acts constitute multiple material breaches of the contract and a constructive termination of Mr. Hudak, freeing him from any further obligation to perform the contract and from any restrictive covenant contained therein.

## Background

## The Initial Agreements Between Mr. Hudak and Acrisure

10.     Mr. Hudak is a successful insurance broker in the commercial lines and group benefits industries.

11.     Over the last 30 years, Mr. Hudak has developed broad contacts in these industries, and a client list, known colloquially, and sometimes referred to herein, as his "Book of Business," which generates annual gross revenues in excess of $1 million.

12.     Mr. Hudak built his Book of Business by virtue of his hard work, his determination and his devotion to his craft and his clients and his tireless service to his clients' needs.

13.     Prior to March 1, 2019, Mr. Hudak was an independent contractor (known in the industry as a "Producer") in the insurance brokerage industry, operating under the d/b/a of Barclay Brokers ("Barclay").

14.     On March 1, 2019, Mr. Hudak entered into a series of interrelated agreements with Acrisure and one of its branches, non-party The Whitmore Group ("TWG") including a Book Purchase Agreement (the "BPA"), a Producer Agreement (the "Producer Agreement") and a Letter Agreement (the "Letter Agreement").

15.     The BPA spelled out the terms upon which Mr. Hudak would sell his Book of Business to Acrisure.

16.     The Producer Agreement and the Letter Agreement spelled out the terms of Mr. Hudak's employment with Acrisure, including his compensation, which contained valuable incentives for Mr. Hudak to continue growing his business.

17.     The Producer Agreement and the Letter Agreement are collectively referred to herein as the "Employment Agreement."

18.     Pursuant to the BPA, Mr. Hudak, through Barclay, transferred to TWG his interest in certain insurance brokerage accounts identified in the BPA (the "TWG Accounts").

19.     Pursuant to the Employment Agreement, Acrisure is obligated to compensate Mr. Hudak for his performance of insurance brokerage services for Acrisure.

20.     Specifically, pursuant to the Employment Agreement, *inter alia*, Mr. Hudak is entitled to receive a commission of 40% for the first year of any new accounts and a commission of 30% after the first year.

21.     With respect to the timing of his payment, the Employment Agreement specifically states "Employee shall not earn any commission until the Company receives payment of such commission form the insurance company or product vendor.  Once earned, the commission shall be payable to Employee at the next scheduled commission payment date if the

14

Company received payment of the gross commission from the insurance or product vendor at least five (5) business days before the scheduled commission payment date."

22.     This is a material term since, as a 100% commission-based producer, Mr. Hudak was on a periodic pay cycle that paid him once a month on or about the 15th of the month.

23.     Pursuant to the Employment Agreement, if Mr. Hudak's First Year Revenue as that term is defined therein was greater than the Threshold Revenue Target as that term is defined therein, then Acrisure is obligated to pay Mr. Hudak 1.5 times the amount of that excess.

24.     Further pursuant to the Employment Agreement, Acrisure was obligated to pay Mr. Hudak two times the gross revenues of all accounts referred by an individual named Mario Capobianco, which accounts are referred to herein as the "Referral Accounts".

25.     A similar compensation schedule applied in the second year of the Employment Agreement.

### The Settlement Agreement Between Mr. Hudak and Acrisure

26.     Unfortunately, the parties to the Employment Agreement had numerous disputes.

27.     Ultimately, these disputes were settled and the parties to the Employment Agreement entered into a separate settlement agreement dated September 6, 2020 (the "September Agreement") that spelled out new terms under which Mr. Hudak would continue his affiliation with Acrisure, this time as a producer at City, not TWG.

28.     The September Agreement is comprised of a settlement agreement and, except as specifically exempted, incorporated the BPA and the Employment Agreement.

29.     The September Agreement, *inter alia*, required that Mr. Hudak transfer to City, but otherwise left in place the transfer of the TWG Accounts to TWG and Mr. Hudak's compensation as called for under the Employment Agreement.

15

30.     In fact, the September Agreement affirmed Mr. Hudak's Employment Agreement with Acrisure, stating at ¶ 3(g) that: "Acrisure and Hudak agree and acknowledge that the Hudak Employment Agreement shall remain in full force and effect subsequent to the execution of this agreement."

31.     On August 14, 2020 and again in September 2020, Mr. Hudak provided Roe with a copy of the BPA and the Employment Agreement.

32.     Accordingly, Roe was aware of the terms and conditions of the Employment Agreement at all relevant times, including, but not limited to, prior to the September Agreement and Mr. Hudak's planned transfer to City.

33.     Upon information and belief, Acrisure had no intention of honoring the compensation schedule Mr. Hudak and Acrisure had agreed to in the Employment Agreement and always planned on demanding that Mr. Hudak accept a different compensation schedule more beneficial to City and, therefore, Acrisure.

34.     However, in September 2020, Mr. Hudak also communicated to Roe that he was working on a significant amount of new business for January 1, 2022.

35.     Rather than addressing the differences in compensation as called for under the Employment Agreement and what Roe wanted, and risk having Mr. Hudak look for another Acrisure branch that would actually honor the Employment Agreement, Roe did not disclose the issue until the new business was written with City.

**Acrisure's Breaching and/or Undermining of the September Agreement**

36.     Notwithstanding that he was aware of the terms of the Employment Agreement, almost immediately after entry into the September Agreement, Acrisure, through Roe, began to

undermine the September Agreement in an attempt to maximize the financial benefit to City, at the expense of Mr. Hudak.

37.     First, Roe failed and refused to incorporate Mr. Hudak into City.

38.     In fact, Mr. Hudak has never received a paycheck from City for the new business that he wrote with City as far back as December 2020.

39.     Second, Roe has repeatedly undermined the structure of the September Agreement as it pertains to the TWG Accounts.

40.     As noted above, among other things, the September Agreement contemplated that the TWG Accounts would continue to be serviced by TWG even though Mr. Hudak was transferring to City, and that Mr. Hudak would be compensated for those accounts in accordance with the terms of the Employment Agreement.

41.     The September Agreement also contemplated that, prior to March 1, 2021, new accounts written by Mr. Hudak would continue to be written through and serviced by TWG and also subject to the Employment Agreement.

42.     Notwithstanding this agreement, within days of execution of the September Agreement, Roe falsely represented to Mr. Hudak on numerous occasions that Acrisure wanted any new business written by Mr. Hudak prior to March 1, 2021, to be written through City, and not TWG.

43.     Roe also falsely represented to Mr. Hudak that, instead of having the TWG Accounts serviced by City, any commissions received by City prior to March 1, 2021 by virtue of the TWG Accounts would be forwarded to TWG before the March 1, 2021 deadline.

44.     Although this was not Mr. Hudak's understanding of the mechanics of the September Agreement, since Roe was an Acrisure executive and the President of the branch at

which Mr. Hudak was now supposed to work, he wrote the new accounts at City, with the confirmation from Roe that the appropriate commissions would be sent to TWG as required by the September Agreement.

45.     At that time, Roe also falsely represented to Mr. Hudak, again on numerous occasions, that Acrisure would be moving all of the TWG Accounts to City after March 1, 2021.

46.     Mr. Hudak repeatedly told Roe that he was not aware of that and that, notwithstanding anything that Roe stated to the contrary, he was going to continue to operate under the September Agreement.

47.     However, Roe persisted and attempted to enlist Mr. Hudak to join him in his scheme to undermine the September Agreement.

48.     In fact, Roe told Mr. Hudak numerous times through emails, voicemails and in-person meetings that Acrisure Regional Vice President Tim Johnson "was on our side and wanted the Existing Accounts moved from Whitmore to CUA [City]," which was a direct violation of the September Agreement.

49.     In one meeting with Roe, Roe declared to Mr. Hudak that he intended to transfer all of the Existing Accounts from TWG to City by virtue of Broker of Record ("BOR") Letters.

50.     BOR letters are letters that are executed by the clients themselves and would serve to change the accounts from TWG to City.

51.     Roe had asked Mr. Hudak to coordinate procurement of these letters since the client contacts were Mr. Hudak's contacts.

52.     Mr. Hudak responded to Roe: "If Acrisure wants the accounts moved to CUA [City], why don't they just move them?"  "Why would we have to BOR them?"

53.     Roe had no response.

54.     In any event, Mr. Hudak again advised Roe that he would take no part in any attempt to move the TWG Accounts in any manner contrary to the September Agreement.

55.     As Mr. Hudak was starting to get concerned that Roe was attempting to undermine the September Agreement, and that his involvement with that agreement seemed to be a ruse so he could take the TWG Accounts, he reached out to Acrisure Executive Tim Johnson directly for clarification that Acrisure was backing him concerning implementation of the September Agreement.

56.     Mr. Johnson acknowledged that Roe was pressing him about the TWG Accounts but was noncommittal about his (and Acrisure's) position.

57.     Instead, Mr. Johnson only stated that he wanted what was best for the clients and respected both Roe and the TWG President and that he wanted a successful outcome for all parties.

58.     Sensing that Acrisure was not committed to the September Agreement, on April 21, 2021 Mr. Hudak sent a text message to Mr. Johnson letting him know that it was his intention to "live by the terms of the Settlement Agreement and to leave the Existing Accounts at Whitmore [TWG]".

59.     However, all of this served to undermine the structure of the September Agreement and also poisoned the potentially toxic relationship between Mr. Hudak and TWG, which was only now recovering from the settlement in September 2020.

**Acrisure Breaches the September Agreement**

60.     As noted above, pursuant to the September Agreement, Mr. Hudak is entitled to receive a commission of 40% for the first year of any new accounts and a commission of 30% after the first year subsequent to the execution of the September Agreement and as called for in

the Employment Agreement, all of which remain in full force and effect except as modified herein.

61.     This compensation was based on the commissions received by TWG under the Employment Agreement.

62.     However, despite numerous verbal and email requests by Mr. Hudak to Roe to forward all commissions and associated statements to TWG as required by the Employment Agreement, Roe did not comply.

63.     In fact, not until well after the March 1, 2021 deadline did Roe make any attempt to forward commissions to TWG.

64.     However, these commissions were insufficiently reported and ultimately returned by TWG to City because Roe missed the March 1, 2021 cutoff date, costing Mr. Hudak thousands of dollars and putting him in a precarious position with TWG.

65.     Moreover, the September Agreement further provided that, for new accounts Mr. Hudak generated after March 1, 2021, Mr. Hudak would be compensated as called for under the Employment Agreement.

66.     However, Roe had a predetermined plan to reduce Mr. Hudak's compensation structure by no less than 17%, notwithstanding the September Agreement.

67.     For example, Roe re-directed portions of Mr. Hudak's commissions under the guise of "Cross Sale" agreements to other members of his organization to whom he has preexisting commitments.

68.     Specifically, Mr. Hudak was confronted by an individual named Chris Connors, a City employee, who informed Mr. Hudak that as the Manager of the Group Benefits practice, he was entitled half of Mr. Hudak's compensation for certain accounts Mr. Hudak had underwritten.

69.     This was the first time Mr. Hudak had heard of any such "cross sharing" arrangements at City and they were certainly not part of the Employment Agreement.

70.     Mr. Hudak told Mr. Connors that he had no knowledge of any such arrangements and that his compensation was controlled by the Employment Agreement.

71.     Nonetheless, even though this "cross-sharing" concept was directly contrary to the requirements of the September Agreement, it was done, and continues to be done, without notice or permission from Mr. Hudak.

**Acrisure Withholds Mr. Hudak's Compensation as
Leverage to Amend the September Agreement**

72.     Throughout this entire time, in his most blatant attempt to coerce Mr. Hudak into reducing his compensation, Roe was also withholding payment to Mr. Hudak of compensation he had already earned under the September Agreement.

73.     In fact, Mr. Hudak had never been paid by City for any of the new business that Mr. Hudak has written for City going back to December of 2020;

74.     Accordingly, in June 2021, Mr. Hudak wrote to the head of Human Resources ("HR") at Acrisure, Lois Saladin-Neering, PHR, SHRM-CP, to inquire about when he would be paid.

75.     Ms. Saladin-Neering expressed shock and concern that Acrisure had failed and refused to pay him his commissions for so long, and advised that she would coordinate payment immediately.

76.     Unfortunately, that is not what happened.

77.     Instead, as a condition to getting paid commissions he had already earned, Acrisure presented Mr. Hudak with a proposed amendment to the Employment Agreement,

which required Mr. Hudak to accept a reduced commission from that specified in the

Employment Agreement (the "Proposed Amendment").

78.     Moreover, the Proposed Amendment required Mr. Hudak to accept reduced

commissions effective March 1, 2021.

79.     Accordingly, the Proposed Amendment required Mr. Hudak to reduce

commissions he had ***already earned*** under the September Agreement.

80.     On August 2, 2021, notwithstanding her prior commitment to coordinate payment

to Mr. Hudak, Saladin-Neering stated:

> If you're all set with the Amendment, please sign and return to me
> at your earliest opportunity.  I will have a copy executed and
> returned for your reference. Your acknowledgment will allow us to
> move forward with key items such as make your transfer to City
> Underwriting Agency, open your access to make your benefit
> elections per your eligibility for 8/1/2021, and request payment of
> your commission to be done 48 hours from the date processed.

81.     Thus, it was clear that Mr. Hudak would not be paid until he signed off on the

Proposed Amendment, reducing his commissions moving forward and reducing the commissions

he had already earned under the September Agreement.

82.     Thereafter, Mr. Hudak's counsel wrote to Acrisure's Senior Vice-President and

General Counsel, Jamie Yadgaroff, Esq., to clarify that Acrisure was demanding that Mr. Hudak

agree to a pay-cut and to accept less than what he already earned for services rendered under the

September Agreement as a condition to get paid for services already rendered, all without any

consideration for Mr. Hudak.

83.     Ms. Yadgaroff confirmed that this was precisely the case.

84.     Accordingly, not only was Acrisure mandating that Mr. Hudak accept a reduced commission moving forward in exchange for money he had already earned, it was mandating that Mr. Hudak accept a reduced amount for March 2021 moving forward.

85.     These acts constitute multiple material breaches of the September Agreement.

86.     These acts constitute a constructive termination of Mr. Hudak.

87.     Mr. Hudak earned commissions every month of 2021 on his new business accounts with City in the total amount of no less than $100,000.

88.     Acrisure has not Mr. Hudak and continues to withhold compensation owed Mr. Hudak for such new business with City under the September Agreement.

89.     In August 2021, Mr. Hudak instituted an action against, *inter alia*, Acrisure seeking money damages and a declaratory judgment that Acrisure had materially breached the Settlement Agreement and/or constructively terminated Mr. Hudak (the "New York Action").

90.     Mr. Hudak is entitled to money damages and a judicial declaration that, by virtue of these multiple material breaches of the September Agreement, (1) Mr. Hudak is free from any further performance obligations under the September Agreement; and (2) Acrisure is barred from attempting to enforce any restrictive covenants as against Mr. Hudak.

91.     Mr. Hudak is entitled to money damages and a judicial declaration that, by virtue of the constructive termination of Mr. Hudak under the September Agreement, without cause, (1) Mr. Hudak is free from any further performance obligations under the September Agreement; and (2) Acrisure is barred from attempting to enforce any restrictive covenants as against Mr. Hudak.

## COUNT I - FIRST COUNTERCLAIM
### (Breach of Contract)

92.     Mr. Hudak repeats and realleges the allegations contained in the foregoing paragraphs as if fully set forth herein at length.

93.     On or about September 6, 2020, Mr. Hudak and Acrisure entered into the September Agreement, which is a binding and enforceable contract.

94.     Under the September Agreement, Acrisure was obligated to pay Mr. Hudak for insurance brokerage services performed.

95.     Mr. Hudak fully performed his obligations under the September Agreement, and any and all conditions precedent have been satisfied.

96.     Acrisure breached its binding contractual obligations by failing and refusing to pay Mr. Hudak the commissions he earned under the September Agreement since January 1, 2021.

97.     As a direct result of this willful breach, Mr. Hudak has suffered damages in an amount to be determined at trial, but in no event less than $100,000.

98.     Further, Mr. Hudak is entitled to a judicial declaration that Acrisure has materially breached the September Agreement and/or that Mr. Hudak has been constructively terminated, without cause, and that, as a result, (1) Mr. Hudak if free from any further performance obligation under the September Agreement; and (2) Acrisure is barred from attempting to enforce any restrictive covenants as against Mr. Hudak.

## COUNT II - SECOND COUNTERCLAIM
### (Breach of the Covenant of Good Faith and Fair Dealing)

99.     Mr. Hudak repeats and realleges the allegations contained in the foregoing paragraphs as if fully set forth herein at length.

100.    The September Agreement is a valid and enforceable contract.

101.    The law imposes on every contact an implied covenant of good faith and fair dealing.

102.    That duty is breached when one party to the contract acts in a manner that deprives the other party of the right to receive the benefits under their agreement.

103.    Acrisure breached the implied covenant of good faith and fair dealing by, *inter alia*, failing and refusing to pay Mr. Hudak the commissions he is owed under the September Agreement.

104.    Acrisure breached the implied covenant of good faith and fair dealing by, *inter alia*, attempting to undermine that agreement by misrepresenting that the TWG Accounts were to be moved to City.

105.    Acrisure further breached the implied covenant of good faith and fair dealing by attempting to destroy the relationship between Mr. Hudak and TWG so that City could take the TWG Accounts from TWG.

106.    As a consequence of this breach, Mr. Hudak is entitled the money damages in an amount to be determined at trial, but in no event less than $100,000.

107.    Further, Mr. Hudak is entitled to a judicial declaration that Acrisure has materially breached the September Agreement and/or that Mr. Hudak has been constructively terminated, without cause, and that, as a result, (1) Mr. Hudak if free from any further performance obligation under the September Agreement; and (2) Acrisure is barred from attempting to enforce any restrictive covenants as against Mr. Hudak.

### COUNT III - THIRD COUNTERCLAIM
**(Unjust Enrichment)**

108.    Mr. Hudak repeats and realleges the allegations contained in the foregoing paragraphs as if fully set forth herein at length.

109.    Mr. Hudak performed all obligations of the September Agreement.

110.    Acrisure knowingly accepted and retained the benefits conferred by the performance of such obligations.

111.    Acrisure has unjustly benefitted at Mr. Hudak's expense insofar as they have failed and refused to pay certain commissions Mr. Hudak.

112.    It would contravene equity and good conscience to permit Acrisure to retain the benefit of Mr. Hudak's performance while denying him the expected benefits of such performance.

113.    Acrisure has a legal and equitable obligation to account for the benefit that Mr. Hudak's performance of the September Agreement conferred on them.

114.    Mr. Hudak is entitled to compensation and restitution from Acrisure for the value of the property, benefits, and opportunities wrongfully obtained by Acrisure as set forth herein in an amount to be determined at trial.


**COUNT IV - FOURTH COUNTERCLAIM**
**(Conversion)**

115.    Mr. Hudak repeats and realleges the allegations contained in the foregoing paragraphs as if fully set forth herein at length.

116.    Mr. Hudak performed all obligations required of him under the September Agreement.

117.    Acrisure has unjustly benefitted at Mr. Hudak's expense insofar as they have failed and refused to pay certain commissions owed to Mr. Hudak.

118.    Upon Acrisure's failure to pay the commissions to Mr. Hudak, Mr. Hudak had an immediate superior right of possession of such funds.

119.    Acrisure exercised and continues to exercise unauthorized dominion over such funds to the exclusion of Mr. Hudak's rights.

120.    Mr. Hudak was damaged by Acrisure's conversion in an amount to be determined at trial, but in no event less than $100,000.

## COUNT V - FIFTH COUNTERCLAIM
### (Unpaid Wages Under Article 6 of the New York Labor Law)

121.    Mr. Hudak repeats and realleges the allegations contained in the foregoing paragraphs as if fully set forth herein at length.

122.    Acrisure is an "employer" as defined in Section 190 of the New York Labor Law (the "Labor Law").

123.    Mr. Hudak was an "employee" as that term is defined in Section 190 of the Labor Law.

124.    The payments enumerated hereinabove are "wages" as that term is defined in Section 190 of the Labor Law.

125.    Acrisure has willfully violated Section 191(d) of the Labor Law by failing to pay Mr. Hudak the wages enumerated hereinabove earned in accordance with the terms of the September Agreement and the Employment Agreement.

126.    Acrisure's failure to pay Mr. Hudak the full amount of his wages and otherwise to comply with the requirements of Article 6 of the Labor Law was willful, not in good faith, and in reckless disregard of the Labor Law.

127.    As a direct and proximate result of Acrisure's actions, Mr. Hudak has suffered damages in an amount to be determined at trial.

128.     As a proximate result of the actions of Acrisure, Mr. Hudak has had to retain the services of the undersigned law firm and has agreed to pay them a reasonable fee for its services.

129.     In addition to the money damages set forth hereinabove, Mr. Hudak is also entitled to an award of liquidated damages and attorneys' fees.

**COUNT VI - SIXTH COUNTERCLAIM**
**(Improper Deductions Under Article 6 of the New York Labor Law)**

130.     Mr. Hudak repeats and realleges the allegations contained in the foregoing paragraphs as if fully set forth herein at length.

131.     Acrisure is an "employer" as defined in Section 190 of the Labor Law.

132.     Mr. Hudak was an "employee" as that term is defined in Section 190 of the Labor Law.

133.     Acrisure has repeatedly and willfully violated Section 193 of the Labor Law by improperly deducting a percentage of Mr. Hudak's wages.

134.     The deductions were not authorized by Mr. Hudak, were not for his benefit, and were not otherwise permissible under Section 193 of the Labor Law.

135.     Acrisure's failure to pay Mr. Hudak the full amount of his wages and otherwise to comply with the requirements of Article 6 of the Labor Law was willful, not in good faith, and in reckless disregard of the Labor Law.

136.     As a direct and proximate result of Acrisure's actions, Mr. Hudak has suffered damages.

137.     As a proximate result of the actions of Acrisure, Mr. Hudak has had to retain the services of the undersigned law firm and has agreed to pay it a reasonable fee for its services.

138.     In addition to the money damages set forth hereinabove, Mr. Hudak is also entitled to an award of liquidated damages and attorneys' fees.

## COUNT VII - SEVENTH COUNTERCLAIM
### (Declaratory Judgment)

139.    Mr. Hudak repeats and realleges the allegations contained in the foregoing

paragraphs as if fully set forth herein at length.

140.    There is an actual and justiciable controversy between the parties as to whether

Acrisure has materially breached the September Agreement and/or constructively terminated Mr.

Hudak, without cause, by, *inter alia*, failing and refusing to make commission payments as

called for thereunder and withholding commission payments to Mr. Hudak unless and until he

agreed to execute and return the Proposed Amendment.

141.    Mr. Hudak has a present need for this controversy to be judicially resolved insofar

as Acrisure is failing and refusing to honor its commitments under the September Agreement and

undermining his ability to enjoy the benefit of that agreement.

142.    As a result of the foregoing, Mr. Hudak is being deprived of his rightful

compensation under the applicable agreements and his continued affiliation with Acrisure is

currently damaging an important business relationship, which relationship is on the verge of

being permanently damaged and destroyed.

143.    Although the Producer Agreement purported to contain restrictive covenants (the

"Restrictive Covenants"), it did not contain any consideration in exchange for these Restrictive

covenants.

144.    In addition, the Restrictive Covenants are unlawful in terms of duration and scope

and are otherwise unreasonable and not intended to protect a legitimate business interest of

Acrisure.

145.    Accordingly, Mr. Hudak is entitled to a judicial declaration adjudicating and

declaring that (1) Acrisure has materially breached the September Agreement and/or Mr. Hudak

has been constructively terminated, without cause; (2) Mr. Hudak is excused from further performance under the September Agreement; and (3) Acrisure is barred from attempting to enforce the Restrictive Covenants as against Mr. Hudak by virtue of their prior material breaches of the September Agreement and/or their constructive termination of Mr. Hudak, without cause.

## COUNT VIII - EIGHTH COUNTERCLAIM
### (Declaratory Judgment)

146.     Mr. Hudak repeats and realleges the allegations contained in the foregoing paragraphs as if fully set forth herein at length.

147.     Although the Producer Agreement purported to contain the Restrictive Covenants, it did not contain any consideration in exchange for these Restrictive covenants.

148.     In addition, the Restrictive Covenants are unlawful in terms of duration and scope and are otherwise unreasonable and not intended to protect a legitimate business interest of Acrisure.

149.     The Restrictive Covenants are not enforceable because (1) they are greater than is required for the protection of the legitimate interest of Mr. Hudak's counterparties, (2) they impose an undue hardship on Mr. Hudak, and/or (3) they are injurious to the public.

150.     For example, the Restrictive Covenants purport to bar Mr. Hudak from earning a livelihood for a period of two years, while at the same time Acrisure is actively withholding earned compensation.

151.     There is an actual and genuine controversy as to whether the Restrictive Covenants are enforceable.

152.     Mr. Hudak has a present need for this controversy to be judicially resolved.

153.     Mr. Hudak is entitled to a declaratory judgment that the Restrictive Covenants are unenforceable.

WHEREFORE, Mr. Hudak hereby requests Judgment against Acrisure as follows:

(a)  Declaring that Acrisure has materially breached the September Agreement and/or that

Acrisure has constructively terminated Mr. Hudak, without cause;

(b)  Declaring that Mr. Hudak is excused from further performance of the September

Agreement by virtue of Acrisure's prior material breach and/or by virtue of

Acrisure's constructive termination of Mr. Hudak, without cause.

(c)  Declaring that the Restrictive Covenants contained in the September Agreement are

unenforceable as against Mr. Hudak;

(d)  Awarding Mr. Hudak money damages in an amount to be determined at trial, but in

no event less than $100,000;

(e)  Awarding Mr. Hudak liquidated damages, punitive damages and attorneys' fees as

required under the New York Labor Law;

(f)  Interest on all money damages as required by law; and

(g)  Such other and further relief as this Court deems just and proper under the

circumstances.

## **JURY TRIAL DEMAND**

Mr. Hudak respectfully demands a trial by jury in this action for all issues so triable.

Dated: January 14, 2022

Respectfully submitted,

THE HEALTH LAW PARTNERS, P.C.


By: */s/ Isaac Sternheim*
Isaac Sternheim (P77634)
Robert Dindoffer (P72319)
Abby Pendleton (P55736)

32000 Northwestern, # 240
Farmington Hills, MI 48334
(248) 996-8510
rdindoffer@thehlp.com
isternheim@thehlp.com
apendleton@thehlp.com

ARKIN SOLBAKKEN LLP
Robert C. Angelillo, Esq.
900 Third Avenue, 18th Floor
New York, New York 10022
(212) 333-0216
rangelillo@arkin-law.com
(Admission Pending)

*Attorneys for Defendant and Counterclaim Plaintiff
Marc Hudak*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 14, 2022, the foregoing was filed electronically with the

Clerk of the Court to be served by operation of the Court's electronic filing system to all counsel

of record.

By: *<u>/s/ Isaac Sternheim</u>*
Isaac Sternheim (P77634)
The Health Law Partners, P.C.
32000 Northwestern Highway, Suite 240
Farmington Hills, MI 48334
(248) 996-8510