UNITED STATES DISTRICT COURT
WESTERN DISTRICT
SOUTHERN DIVISION

_____

| | |
|---|---|
| ACRISURE, LLC, a Michigan limited liability company, | Case No. 1:22-cv-17 |
| | Hon. Hala Y. Jarbou |
| Plaintiff/Counter-Defendant, | |
| v. | |
| MARC HUDAK, a resident of New York, | **BRIEF IN SUPPORT OF PLAINTIFF/COUNTER-DEFENDANT'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)** |
| Defendant/Counter-Plaintiff. | |

---

Jon M. Bylsma (P48790)
Timothy P. Monsma (P72245)
VARNUM LLP
Attorneys for Plaintiff/Counter-Defendant
P.O. Box 352
Grand Rapids, MI 49501
616/336-6000
jmbylsma@varnumlaw.com
tpmonsma@varnumlaw.com

Robert Dindoffer (P72319)
Isaac Sternheim (P77634)
THE HEALTH LAW PARTNERS
32000 Northwestern, # 240
Farmington Hills, MI 48334
(248) 996-8510
rdindoffer@thehlp.com
isternheim@thehlp.com

Robert C. Angelillo, Esq.
ARKIN SOLBAKKEN LLP
900 Third Avenue, 18th Floor
New York, New York 10022
(212) 333-0216
rangelillo@arkin-law.com
(*Pro Hac Vice* Admission Pending)

Attorneys for Defendant/Counter-Plaintiff

---

1

## I.  INTRODUCTION

This case arises out of Defendant, Marc Hudak's breach of a settlement agreement (the "Settlement Agreement"), as well as the employment agreement incorporated into the Settlement Agreement, and the restrictive covenants contained in that agreement.  On or around September 6, 2020, Acrisure and Hudak, along with one of Acrisure's affiliated, unincorporated entities, TWG Management, Ltd., entered into a Settlement Agreement resolving litigation filed by Hudak against Acrisure in New York.  Among other things, the Settlement incorporated Hudak's two-year noncompetition and nonsolicitation obligations under his employment agreement (the "Hudak Employment Agreement").  Less than a year later, on August 24, 2021, Hudak resigned from Acrisure and began to compete through his own agency, Barclay Insurance Brokers, Ltd. ("Barclay").  He immediately began soliciting Acrisure's customers, many of which he had serviced as an Acrisure employee.  Despite repeated demands, Hudak continues to unlawfully compete against Acrisure, and he continues to solicit Acrisure's customers in violation of his restrictive covenants.  This lawsuit generally is the result.

In response to Acrisure's Complaint, Hudak filed a kitchen sink counterclaim ("the Counterclaim"), attempting to allege a litany of tort and contract claims to distract from his own, undisputed wrongdoing.[1]  Specifically, On January 14, 2022, Hudak filed his Counterclaim, asserting one hundred fifty-three paragraphs of conclusory allegations spanning thirty-one pages. Hudak attempts to state claims for: breach of contract (Count I), breach of the covenant of good faith and fair dealing (Count II), unjust enrichment (Count III), common law conversion (Count

---

[1] Notably, nowhere in either his Counterclaim or his response to Acrisure's pending motion for a TRO does Hudak deny the fact that (1) his agreements with Acrisure preclude him from competing with Acrisure and (2) he is, in fact, currently competing with Acrisure and soliciting its customers.

2

IV), violations of New York labor law (Counts V and VI), and declaratory relief (Counts VII and VIII).  As explained below, each of these purported claims fails as a matter of law.  Consequently, the Counterclaim should be dismissed in its entirety.

## II.    PERTINENT ALLEGATIONS

Hudak's Counterclaim arises out of alleged (though unidentified) wrongdoing by Acrisure, a national insurance broker with its headquarters located in Grand Rapids, Michigan, following a Settlement Agreement entered into between Acrisure and Hudak, among other parties.  *See* Counterclaim at ¶¶ 26-35.  On March 1, 2019, Acrisure purchased the assets of the Whitmore Group, Ltd. ("Whitmore"), a New York-based insurance agency for which Hudak worked as a producer.  *See id.* at ¶¶ 14-16.  Contemporaneous with Acrisure's purchase of Whitmore's assets, Whitmore purchased Hudak's book of business.  *Id.* at ¶ 14.  As part of the March 1, 2019 transaction, Hudak entered into an Employment Agreement with Acrisure (the "Hudak Employment Agreement").  *See id.* at ¶ 14.  A copy of the Employment Agreement is attached as **Exhibit A**.[2]  The Hudak Employment Agreement, contains restrictive covenants including nonsolicitation and noncompetition obligations.  See *id.* at ¶ 10.  Specifically, Hudak agreed:

> [T]he business [Hudak] secures, develops or services for [Acrisure] or for an Affiliated Entity **shall constitute the exclusive property of [Acrisure]** or Affiliated Entity as applicable.  In view of the foregoing, [Hudak] agrees that, for the duration of [his] employment, and in the event [his] employment is terminated for any reason, **for a period of two (2) years** after the termination of employment:

---

[2] The Hudak Employment Agreement, as well as the Settlement Agreement, are specifically referenced in the Counterclaim and therefore are part of the pleadings for purposes of this motion.  *See, e.g.*, *Vandenheede v. Vecchio*, 541 Fed. App'x. 577, 579 (6th Cir. 2013) ("In determining the sufficiency of the complaint, we confine our review to the pleadings, exhibits attached to or addressed in the complaint, documents included with a motion to dismiss if referenced in the complaint, and public records.")

3

      a.    <u>Non-Solicitation/Non-Interference</u>. [Hudak] will not directly or indirectly, for himself ... or for any other person, corporation, firm, or entity ... engage in any of the following activities ...

           i.    Contacting or engaging in any communication with any [Acrisure] or Affiliated Entity customer for whom [Hudak] had responsibility, or ... engaging in communications with any ... customer or prospective customer about whom [Hudak] obtained knowledge during employment with the company to secure business competitive to the products and services provided by [Acrisure];

           ii.    Requesting, advising, or encouraging any customer of [Acrisure] or of an Affiliated Entity to terminate or curtail its relationship with [Acrisure] or Affiliated Entity, or requesting or advising any person to refrain from becoming a customer or supplier of [Acrisure] or an Affiliated entity;

           iii.    Requesting, advising, or encouraging any employee, agent, representative or independent contractor of [Acrisure] or an Affiliated Entity to terminate his, her, or its relationship with [Acrisure] ...

      b.    <u>Non-Competition</u>. [Hudak] will not directly or indirectly ... engage in any business in which [Acrisure] or an Affiliated Entity is engaged at the time of termination of employment, in any state in which [Acrisure] or Affiliated Entity transacts business at the time of employment termination.

*Id.* (emphasis added). Importantly, Hudak expressly agreed that these restrictions were both reasonable and necessary to protect Acrisure's legitimate business interests. *Id.* at ¶ 11. He further agreed that the restrictive covenants would be tolled in the event of any breach and that Acrisure would be entitled to injunctive relief. *Id.* Moreover, Hudak expressly agreed to reimburse Acrisure for all costs and attorneys' fees incurred in connection with addressing a breach of his restrictive covenants. *Id.* at ¶ 14.

During the course of the next year, Hudak increasingly made various allegations of purported wrongdoing related to Mr. Metzger, the Side Letter Agreement, and Acrisure. *See* Counterclaim at ¶¶ 26-27. On May 27, 2020, Hudak filed a lawsuit naming Acrisure, Whitmore and Mr. Metzger as defendants related to Hudak's claims that the defendants had breached their various obligations under the agreements they had with him. *See* Settlement Agreement, **Exhibit B**, at 3.[3] That litigation, as well as any other claims that Hudak may have had against Mr. Metzger and Acrisure, was settled via a Settlement Agreement in September of 2020. *See generally id.*

As part of the Settlement Agreement, Hudak received an additional payment from Mr. Metzger, Hudak voluntarily choose to work out of a different Acrisure office to avoid having to work with Mr. Metzger, and Acrisure and Hudak agreed that his employment would:

> Continue pursuant to the terms of the Hudak Employment Agreement, ***the terms of which Hudak acknowledges are enforceable and based upon sufficient consideration***, including, but not limited to, Paragraphs 8-14 covering Hudak's confidentiality obligations to Acrisure, the Restrictive Covenants, and Hudak's acknowledgement of the exclusive jurisdiction of the Michigan federal or state courts.

*Id.* (emphasis added). The Settlement Agreement is governed by Michigan law, and Hudak consented to exclusive jurisdiction in Michigan.[4] See *id.* at ¶ 9.

Following the execution of the Settlement Agreement, Hudak began working out of another New York-based Acrisure office doing business as City Underwriting ("City"). *See* Counterclaim at ¶¶ 27, 29. In August of 2021, Hudak resigned from Acrisure. *See id.* at ¶¶ 80, 89. Despite his obligations under the restrictive covenants in the Hudak Employment Agreement, Hudak has

---

[3] The Settlement Agreement is likewise referenced in, and therefore a part of, the pleadings for purposes of this motion. *Vandenheede*, 541 Fed. App'x. at 579.

[4] Hudak filed a baseless strike suit in New York against Acrisure anyway and then voluntarily dismissed that complaint in response to Acrisure's motion to dismiss.

blatantly and intentionally violated those restrictive covenants by competing with Acrisure as CEO of Barclay and by soliciting customers being serviced by both the Whitmore Acrisure office and the City Acrisure office. *See id.* at ¶¶ 13, 146-143 (seeking the right to continue to compete with Acrisure, notwithstanding Hudak's restrictive covenants).

Acrisure has been damaged by Hudak's breaches of the Hudak Employment Agreement and the Settlement Agreement and will suffer irreparable harm if he is allowed to continue to violate his contractual commitments. Consequently, on December 6, 2021, Acrisure filed suit against Hudak in the Kent County Circuit Court, Kent County, Michigan. Acrisure also sought injunctive relief. The Kent County Circuit Court was poised to grant Acrisure's request. *See* January 7, 2022, Hrg. Tr. [ECF No. 15-1] at 16 ("As I indicated on Monday to the parties, the provisions [of Hudak's employment agreement] are enforceable[.]"). Consequently, on January 7, 2022, *in the middle of an evidentiary hearing*, Hudak removed this case. He subsequently filed his Answer and Counterclaim (the "Counterclaim") against Acrisure. As set forth below, the Counterclaim fails to state a claim for which relief can be granted. Consequently, it should be dismissed.

### III.   LAW AND ARGUMENT

#### A.   STANDARD OF REVIEW

"To survive a motion to dismiss [under Rule 12(b)(6)], the plaintiff must allege facts that are sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In reviewing a

motion to dismiss, the Court must accept "all well-pleaded factual allegations as true, and examine whether the complaint contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Nolan v. Detroit Edison Co.* 991 F.3d 697, 707 (2021) (internal quotation marks omitted).  Not all allegations need be accepted as true, however.  Courts should not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.  A pleading that merely offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  Nor is a complaint sufficient if it provides only "naked assertion[s]" devoid of "further factual enhancement."  *Id*. at 557; *see also Iqbal*, 556 U.S. at 678. The Court "may also consider documents attached to the complaint. When a document contradicts allegations in the complaint, rendering them implausible, the exhibit trumps the allegations." *Nolan*, 991 F.3d at 707 (internal citation and quotation marks omitted).

### B.  HUDAK FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT (COUNT I).

Applying these well-known standards, Hudak has failed to state a plausible claim for breach of contract.  Although cloaked with a facade of dozens of conclusory, inflamatory paragraphs, Hudak's breach of contract claim ultimately provides only "naked assertion[s]" devoid of "further factual enhancement."  *Id*. at 557; *see also Iqbal*, 556 U.S. at 678.  Hudak asserts, in entirely conclusory fashion, that "Acrisure breached its binding contractual obligations by failing and refusing to pay Hudak the commissions he earned under the September Agreement since January 1, 2021." Counterclaim at ¶ 96.  He claims that this purported breach has caused damages "in no event less than $100,000." *Id.* at ¶ 97.

Hudak's claim raises more questions than it answers.  For instance, which customers were involved?  When did Hudak supposedly earn each commission, and when was each allegedly withheld payment due?  When was each sale at issue supposedly completed?  Were the underlying

7

(unidentified) transactions for old business, new business, or some combination of the two? On what basis were the supposedly overdue commissions calculated, and where is that calculation supported in the Hudak Employment Agreement or the Settlement Agreement? **Which provision of each agreement was breached, and how?**[5] These questions are particularly important, because Acrisure is unaware of any outstanding commissions owed to Hudak; Acrisure should not be called to defend Hudak's claim without basic, plausible answers to these questions.

But the Counterclaim does not provide any of these answers, despite generally alleging unidentified breaches over the course of *more than a year. See id.* at ¶ 96. Without any of these *facts*, the Counterclaim falls far short of stating a *plausible* claim for breach of contract. *See Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678; *Giugliano v. FS2 Capital Partners, LLC*, No. 14–cv–7240, 2015 WL 5124796, at *11 (E.D.N.Y. Sept. 1, 2015) (dismissing claim for breach of contract arising out of underpaid, miscalculated commissions and noting, "[plaintiff] fails to allege any supporting details concerning this claim, including what commissions he claims to have earned and when he earned them; which provision of the Agreement he contends governs the proper method of calculating his commissions; and how [defendant] allegedly failed to properly calculate his commissions, if they were calculated at all. The Court finds no plausible basis for a breach of contract claim arising out of alleged miscalculation of commissions."). Count I of the Counterclaim should be dismissed. *Id.*

---

[5] "In addition to alleging the elements of a breach of contract claim, a plaintiff must also identify the specific provisions of the contract that was allegedly breached." *Mowett v. JPMorgan Chase Bank*, No. 5-12612, 2016 WL 1259091 at *3 (E.D. Mich. March 31, 2016) (dismissing breach of contract claim as "not viable" and noting, "Without identifying the exact provisions that were allegedly breached, the Court cannot determine if Chase actually breached the contract."). Hudak fails to provide even this basic information, despite making one hundred fifty-three paragraphs of allegations sprawled over thirty-one pages.

### C. MICHIGAN DOES NOT RECOGNIZE AN INDEPENDENT CAUSE OF ACTION FOR BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING (COUNT II).

Hudak next attempts to assert a claim for "Breach of the Covenant of Good Faith and Fair Dealing." Counterclaim at ¶¶ 99-107. Specifically, Hudak claims that Acrisure purportedly breached the duty of good faith and fair dealing by: (1) "refusing to pay Mr. Hudak the [unidentified] commissions he is owed," (2) "attempting to undermine that agreement by misrepresenting that the TWG Accounts were to be moved to City," and (3) "attempting to destroy the relationship between Mr. Hudak and TWG so that City could take the TWG Accounts from TWG." *Id.* at ¶¶ 103-105. To be sure, Hudak's allegations are baseless. Regardless, this "claim" fails for one very simple reason: Michigan law does not recognize an independent cause of action for breach of the duty of good faith and fair dealing. *Belle Isle Grill Corp. v. Detroit*, 256 Mich. App. 463, 476; 666 N.W.2d 271 (2003) ("The trial court properly ruled that Michigan does not recognize a claim for breach of an implied covenant of good faith and fair dealing."); *Ulrich v. Fed. Land Bank of St. Paul*, 192 Mich. App. 194, 196; 480 N.W.2d 910 (1991). Consequently, Count II must be dismissed.

### D. HUDAK'S UNJUST ENRICHMENT CLAIM FAILS AS A MATTER OF LAW (COUNT III).

Count III of the Counterclaim, for unjust enrichment, is similarly defective. A claim for unjust enrichment or quasi contract has two elements: "(1) receipt of a benefit by the defendant from the plaintiff and, (2) which benefit it is inequitable that the defendant retain." *Dumas v. Auto Club Ins Ass'n,* 437 Mich. 521, 546; 473 N.W.2d 521 (1991) *remanded on other grounds,* 446 Mich. 864 (1994). "Because this doctrine vitiates normal contract principles, the courts employ the fiction with caution." *Kammer Asphalt Paving Co., Inc. v. East China Twp. Schs*, 443 Mich. 176, 186; 504 N.W.2d 635 (1993) (quotation marks and citation omitted).

However, it is well established under Michigan law that a claim for unjust enrichment is not available if there is an express contract between the parties. *Able Demolition v. Pontiac*, 275 Mich. App. 577, 586 n.4; 739 NW2d 696 (2007); *Bellevue Ventures, Inc. v. Morang-Kelly Inc.*, 302 Mich. App. 59, 64; 836 N.W.2d 898 (2013); *Local Emergency Fin. Assistance Loan Bd. v. Blackwell*, 299 Mich. App. 727, 734; 832 N.W.2d 401 (2013) ("As the trial court correctly noted, an unjust-enrichment claim is available 'only if there is no express contract covering the same subject matter.'"); *King v. Ford Motor Credit Co*, 257 Mich. App. 303, 371; 668 N.W.2d 357 (2003). "If the parties admit that a contract exists, but dispute its terms or effect, an action will not also lie for quantum meruit or implied contract." *Advanced Plastics Corp. v. White Consol Indus., Inc.*, 828 F. Supp. 484, 491 (E.D. Mich. 1993). In other words, "a claim for unjust enrichment cannot be asserted when both parties agree that a contract exists but dispute its terms." *Kussy v. Home Depot USA, Inc.*, No. 06-12899, 2006 WL 3447146, at *4 (E.D. Mich., Nov 28, 2006).

Here, Hudak has admitted there is an agreement between the parties. *See, e.g.*, Counterclaim at ¶¶ 6-7 ("This is an action for money damages and declaratory judgment arising out of Acrisure's multiple material breaches *of an employment contract*." (emphasis added)). In fact, Hudak's purported unjust enrichment claim specifically references and relies on the agreement. *See id.* at ¶ 109. Therefore, a claim for unjust enrichment cannot lie under Michigan law. Hudak's claim for unjust enrichment must be dismissed.

### E.   HUDAK FAILS TO STATE A CLAIM FOR CONVERSION (COUNT IV).

Hudak's claim for common law conversion likewise fails. Hudak contends that Acrisure has committed conversion because, "they [*sic*] have failed and refused to pay certain commissions owed to Mr. Hudak." *Id.* at ¶ 117. However, it is well established that "an action cannot be maintained for conversion of money unless there is an obligation on the part of the defendant to return *the specific money entrusted to his care*[.]" *Citizens Ins. Co. of America v. Delcamp Truck Center, Inc.*, 178 Mich.

App. 570 575; 444 N.W.2d 210 (1989) (emphasis added).  Moreover, "[t]o support an action for conversion of money, the defendant must have *obtained the money without the owner's consent* to the creation of a debtor-creditor relationship and must have had an obligation to *return the specific money* entrusted to his care." *Lawsuit Financial, L.L.C. v. Curry*, 261 Mich. App. 579, 591; 683 N.W.2d 233 (2004) (emphasis added); *see also Garras v. Bekiares*, 315 Mich. 141, 148; 23 N.W.2d 239 (1946) (affirming dismissal of conversion claim for alleged failure to make monthly consignment payments under the parties' agreement and noting, "[t]here can be no conversion of money, unless there was an obligation on the part of defendant to deliver *specific money* to plaintiff." (emphasis added))

Here, Hudak simply accuses Acrisure of a general failure to pay unidentified commissions supposedly owed to him; he does not allege that Acrisure obtained any *specific* money, much less without his consent, or that Acrisure had any obligation whatsoever to return *specific* money that Hudak had entrusted to Acrisure's care.  Thus, his conversion claim must be dismissed. *Lawsuit Financial*, 261 Mich. App. at 591; *Garras*, 315 Mich. at 148.

### F. HUDAK'S CLAIMS UNDER NEW YORK LAW FAIL, BECAUSE THIS DISPUTE IS GOVERNED BY MICHGAN LAW UNDER THE PLAIN LANGUAGE OF HUDAK'S AGREEMENTS (COUNTS V AND VI).

Hudak's purported claims under *New York* law are similarly deficient, because this dispute is governed by *Michigan* law.  Counts V and VI of the Counterclaim attempt to assert claims for alleged back wages and "improper deductions" under "Article 6 of the New York Labor Law." *See* Counterclaim at ¶¶ 121-138.  But both the Hudak Employment Agreement and the Settlement Agreement specifically designate *Michigan* law, not New York law, as the governing law in any dispute between the parties.  *See* Hudak Employment Agreement, **Exhibit A**, at ¶ 18 ("The laws of the State of Michigan shall govern this [Employment] Agreement, excluding choice of law principles."); *see also* Settlement Agreement, **Exhibit B**, at ¶ 9 ("This Agreement ... shall be construed and interpreted in accordance with the laws of the State of Michigan ... without regard

to principles of conflict of laws, venue, and forum non conveniens.").  Since the parties expressly agreed that any disputes would be governed by *Michigan* law, as opposed to *New York* law, the New York Labor Law does not apply, and Counts V and VI should be dismissed.  *See, e.g.*, *Lubinski v. Hub Group Trucking, Inc.*, 690 Fed. App'x 377, 379 (6th Cir. 2017) (affirming dismissal of Illinois wage law claims and holding that Tennessee choice-of-law provision superseded Illinois Wage Law claim); *see also Martin v. Creative Management Grp Inc.*, No. 10-cv-23159, 2013 WL 12061809 at *9 (S.D. Fla. July 26, 2013) (holding New York Labor law inapplicable and noting, "Plaintiff's claim, however, runs afoul of the choice-of-law clause of his employment contract, which states that Florida law will govern any disputes over the subject matter of the contract. ***Where the parties agreed to a choice-of-law provision in their contract, claims brought under the statutes of other states are generally inapplicable***." (emphasis added)).

### G.  HUDAK'S CLAIMS FOR DECLARATORY RELIEF FAIL AS A MATTER OF LAW (COUNTS VII AND VIII).

Hudak's final two claims seek declaratory relief.  Specifically, Hudak seeks a declaratory judgment freeing him from the restrictive covenants he agreed to, with the assistance of counsel.  *See* Counterclaim at ¶¶ 139-153.  These purported claims should also be dismissed.

"The Declaratory Judgment Act is procedural in nature and does not create an independent cause of action that can be invoked absent some showing of an articulated legal wrong."  *Kondaur Capital Corporation v. Smith*, 802 Fed. App'x. 938, 948 (6th Cir. 2020) (internal quotation marks omitted).  Consequently, "[a] request for declaratory relief is barred to the same extent that the claim for substantive relief on which it is based would be barred."  *International Ass'n of Machinists and Aerospace Workers v. Tennessee Valley Authority*, 108 F.3d 658, 668 (6th Cir. 1997) (dismissing claim for declaratory relief barred where plaintiff could not assert an underlying cause of action); *see also Miller v. Bank of New York Mellon*, No. 21-1126, 2021 WL 5702331, at

*6 (6th Cir. Dec. 1, 2021) (affirming dismissal of request for injunctive relief and noting, "because [plaintiff's] other claims have all been dismissed, a declaratory judgment is not available to her.").

Moreover, a declaratory judgment is a *remedy*; there is no independent claim for declaratory relief. *See, e.g.*, *Davis v. U.S.*, 499 F.3d 590, 594 (6th Cir. 2007); *see also Stryker Corp. v. XL Ins. America, Inc.*, No. 1:05–cv–51, 2013 WL 5533609, at *8 (W.D. Mich. Oct. 7, 2013) ("A declaratory judgment is not a claim; it is a remedy."); *Halliday v. Kempker*, No. 1:18-cv-44, 2018 WL 6003975, at *3 (W.D. Mich. Oct. 23, 2018) ("Count IX fails to state a claim because a claim for a declaratory judgment is not an independent cause of action." (internal quotation marks omitted)).

Here, Hudak's claims for declaratory relief fail for at least two independent reasons. First, as outlined above, Hudak has failed to state a viable, independent cause of action against Acrisure. Second, there is no independent cause of action for "declaratory relief," as Hudak has attempted to allege. Therefore, Counts VII and VIII should be dismissed.

## IV.  CONCLUSION

For each of the foregoing reasons, Hudak's Counterclaim should be dismissed in its entirety.

Respectfully submitted,

VARNUM LLP
Attorneys for Plaintiff/Counter-Defendant

Dated:  February 4, 2022

/s/ *Timothy P. Monsma*
Jon M. Bylsma (P48790)
Timothy P. Monsma (P72245)
P.O. Box 352
Grand Rapids, MI 49501
616/336-6000

19116970.1

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that this brief complies with LCivR 7.2(b)(i), includes 3,796 words, inclusive of headings, footnotes, citations and quotations, and was prepared using Microsoft Word Version 1908.

                                            Respectfully submitted,

                                            VARNUM LLP
                                            Attorneys for Plaintiff

                                            /s/ *Timothy P. Monsma*

Dated:  February 4, 2022                    Jon M. Bylsma (P48790)
                                            Timothy P. Monsma (P72245)
                                            P.O. Box 352
                                            Grand Rapids, MI 49501
                                            616/336-6000