UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ACRISURE, LLC,

    Plaintiff,

v.

MARC HUDAK,

    Defendant.
_____/

Case No. 1:22-cv-17

Hon. Hala Y. Jarbou

## OPINION

Plaintiff Acrisure, LLC brought suit against Defendant Marc Hudak in state court for breach of contractual non-solicitation and non-competition obligations. Hudak removed to this Court through diversity jurisdiction and brings counterclaims against Acrisure, including breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment, conversion, and other claims under New York state law. He seeks damages and a declaratory judgment against Acrisure. Before the Court is Acrisure's motion to dismiss Hudak's counterclaims (ECF No. 22). For the reasons stated below, the Court will grant in part and deny in part Acrisure's motion.

### I. BACKGROUND

The parties are insurance brokers. Acrisure is a national insurance broker with headquarters in Grand Rapids, Michigan. On March 1, 2019, Acrisure purchased The Whitmore Group ("Whitmore"), a New-York based insurance agency, with which Hudak had developed a book of business. James C. Metzger, the CEO of Whitmore, purchased Hudak's ownership rights in their shared book of business in order to sell Whitmore to Acrisure. As part of the March 1, 2019 transactions, Hudak entered into an Employment Agreement with Acrisure and Whitmore, now a branch of Acrisure. Hudak's Employment Agreement contains non-solicitation and non-competition obligations for two years following termination of his employment for any reason.

On May 27, 2020, Hudak filed a suit against Acrisure, Whitmore, and Metzger in New York state court for breach under the various March 1, 2019 agreements. This suit resulted in a Settlement Agreement that the parties entered into on September 6, 2020. As part of the Settlement Agreement, Hudak no longer worked with Metzger and Whitmore, but worked out of City Underwriting ("City"), another New York-based Acrisure office. The Settlement Agreement required "all new business generated by Hudak prior to March 1, 2021" to continue to be serviced through Hudak and Whitmore, and thereafter, any new business generated would be serviced through City. (Settlement Agreement ¶¶ 3(c), (f), ECF No. 23-2)

Hudak alleges in his counterclaims that following the Settlement Agreement, City President John Roe, with Acrisure's blessing, withheld Hudak's compensation for almost a year in order to coerce him to agree to a less favorable employment contract. Hudak considered this and other actions to be material breaches of the Settlement Agreement and Employment Agreement and a constructive termination. He filed suit in New York state court on August 24, 2021. Through September and October of that year, the parties engaged in unsuccessful settlement discussions. On December 6, 2021, Acrisure filed suit in Michigan state court, and filed a motion for a TRO or preliminary injunction on December 16, 2021. Hudak removed to this Court on January 7, 2022. The Court has denied both Acrisure's motion to remand and motion for a TRO or preliminary injunction.

## II. STANDARD

A claim may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). To determine whether a pleading fails to state a claim, courts must ask whether the plaintiff has alleged "facts that, if accepted as true, are sufficient to raise a right to relief above the speculative level,' and . . .

'state a claim to relief that is plausible on its face.'" *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atl. Corp.*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausible does not mean probable, but the standard "asks for more than a sheer possibility that a defendant has acted unlawfully . . . . Where a plaintiff pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Assessment of the complaint under Rule 12(b)(6) must ordinarily be undertaken without resort to matters outside the pleadings; otherwise, the motion must be treated as one for summary judgment under Rule 56. *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010). "However, a court may consider exhibits attached to the complaint, public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment." *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016). A "'federal court may [also] take judicial notice of proceedings in other courts of record,'" such as bankruptcy courts. *Siner v. City of Detroit*, No. 15-cv-13532, 2017 WL 1190946, at *2 (E.D. Mich. Mar. 30, 2017) (quoting *Lyons v. Stovall*, 188 F.3d 327, 332 n.3 (6th Cir. 1999)).

### III. ANALYSIS

Acrisure contends that Hudak fails to state a claim for any of the counterclaims he brings. The Court will address each count in turn.

### A. Breach of Contract (Count I)

To state a claim for breach of contract, the claimant must establish that "'(1) there was a contract; (2) which the other party breached; and (3) thereby resulting in damages to the party claiming breach.'" *El-Khalil v. Oakwood Healthcare, Inc.*, 934 N.W.2d 665, 672 (Mich. 2019) (quoting *Miller-Davis Co. v. Ahrens Constr., Inc.*, 848 N.W. 2d 95, 104 (Mich. 2014)).  Acrisure argues that Hudak's claim fails because his allegations are conclusory and do not provide enough detail for the second and third elements to state a plausible claim for breach of contract.  Acrisure poses a list of questions that Hudak's claims raise but do not answer, pointing in particular to Hudak's failure to name the provisions of the Employment Agreement or Settlement Agreement that were breached.

Among other breaches that Hudak raises, his Counterclaim states that "pursuant to the Employment Agreement, *inter alia*, Mr. Hudak is entitled to receive a commission of 40% for the first year of any new accounts and a commission of 30% after the first year."  (Countercl. ¶ 20, ECF No. 9.)  While the Counterclaim does not contain a specific cite to the Employment Agreement or Settlement Agreement,[1] it provides sufficient detail for the Court and Acrisure to identify the specific provision.  (*See* Settlement Agreement ¶ 3(c).) Further, the Counterclaim states that "Mr. Hudak earned commissions every month of 2021 on his new business accounts with City in the total amount of no less than $100,000" (*id.* ¶ 87), and that "Mr. Hudak had never been paid by City for any of the new business that Mr. Hudak has written for City going back to December of 2020." (*Id.* ¶ 73.)  The Employment Agreement includes Schedules A and B which itemize Hudak's "Existing Accounts."  (Schedule A, ECF No. 26-4, PageID.904.)  The

---

[1] As the parties point out, the Employment Agreement and Settlement Agreement are referred to in the claims such that the Court can consider these exhibits on a motion to dismiss.

4

Counterclaim provides sufficient facts for Acrisure, as Hudak's employer, to identify the commissions he claims he is owed, which would logically be any new account generated by Hudak after the Settlement Agreement, not including existing accounts listed in the Schedules. These allegations are sufficient to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" and states a plausible claim for breach of contract. *Bell Atl. Corp.*, 550 U.S. at 555. Hudak points to other allegations that he argues state separate breaches of contract that Acrisure did not address in its opening brief. Regardless, the Court finds that Hudak states a claim for breach of contract.

### B. Breach of the Implied Covenant of Good Faith and Fair Dealing (Count II)

Count II of Hudak's Counterclaim is a claim for the breach of the implied covenant of good faith and fair dealing. Michigan law does not recognize a separate cause of action for breach of this implied covenant. *See, e.g.*, *Belle Isle Grill Corp. v. Detroit*, 666 N.W.2d 271, 279 (Mich. Ct. App. 2003) ("The trial court properly ruled that Michigan does not recognize a claim for breach of an implied covenant of good faith and fair dealing."); *Ulrich v. Fed. Land Bank of St. Paul*, 480 N.W.2d 910, 911 (Mich. Ct. App. 1991); *Dahlman v. Oakland Univ.*, 432 N.W.2d 304, 306 (Mich. Ct. App. 1988) (declining to recognize a cause of action based on the breach of the good faith and fair dealing, "because such a radical departure from the common law and Michigan precedent should come only from the Supreme Court").

Hudak concedes that this claim cannot stand alone yet asserts that the underlying concept of bad faith and unfair dealing can still support a breach of contract claim. He points to *PTN-NRS, LLC v. County of Wayne*, No. 332135, 2017 WL 4447016 (Mich. Ct. App. Oct. 5, 2017), which acknowledged that "Michigan does not recognize a separate cause of action for breach of an implied covenant of good faith and fair dealing apart from a claim for breach of the contract itself," but nevertheless stated that "because the focus of the obligation of good faith is on the manner in

5

which the agreement or other duty is performed or enforced, a breach of contract may be found where bad faith or unfair dealing exists in the performance of a contractual term when the manner of performance was discretionary." *Id.* at *3.  However, the Michigan Court of Appeals returned to this issue in *Kay v. Heyn*, No. 348303, 2020 WL 4236416 (Mich. Ct. App. July 23, 2020), stating "we presume, although we do not decide, that it might be possible to bring a breach of contract claim premised on a breach of an implied covenant of good faith and fair dealing when a contract provides  for a party's discretionary performance and the performing party acts in bad faith." *Id.* at *3.  This indicates that such an exception has not been approved by either the Michigan Court of Appeals or the Michigan Supreme Court.  Given the breadth of Michigan precedent rejecting a breach of an implied covenant of good faith and fair dealing as a separate cause of action, this Court will decline to apply a novel exception.  *See also Rolfe v. Baker Coll.*, No. 340158, 2019 WL 2016026, at *6 (Mich. Ct. App. May 7, 2016) ("This Court has consistently stated that it declines to 'recognize' a breach of an implied covenant of good faith and fair dealing between parties to a contract as 'a cause of action, because such a radical departure from the common law and Michigan precedent should come only from the Supreme Court.'") (quoting *Dahlman*, 432 N.W.2d at 306).

In any case, the cases that Hudak cites make clear that this implied covenant does not apply in employment contracts.  In describing what the implied covenant of good faith and fair dealing is, *PTN-NRS, LLC* states that an implied covenant of good faith and fair dealing "is an implied promise that neither party will do anything 'which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract,'" and this covenant "generally exists in all contracts, *except employment contracts*." *Id.* (emphasis added); *see also Liggett Rest. Grp., Inc. v. City of Pontiac*, No. 256571, 2005 WL 3179679 (Mich. Ct. App. Nov. 29, 2005) ("An

6

implied covenant of good faith and fair dealing generally exists in all contracts, except employment contracts."). Whether or not the performance of a contractual term was discretionary in the Employment or Settlement Agreement such that Acrisure or its agents acting in bad faith could constitute a breach of contract, Hudak fails to address that this covenant does not exist in employment contracts. Therefore, the Court will dismiss Hudak's claim based on the breach of the implied covenant of good faith and fair dealing, even if it were stylized as a breach of contract claim.

### C. Unjust Enrichment (Count III)

A claim for unjust enrichment is only viable "'if there is no express contract covering the same subject.'" *Elia Cos., LLC v. Univ. of Mich. Regents*, 966 N.W.2d 755, 764 (Mich. Ct. App. 2021) (quoting *Belle Isle Grill Corp.*, 666 N.W.2d at 279). Acrisure contends that Hudak's claim for unjust enrichment must be dismissed because Hudak has admitted that an express contract exists between the parties. Hudak responds that he pled this claim in the alternative in the event his declaratory judgment action challenging the enforceability of the Settlement Agreement voids the agreement. But the relief Hudak seeks from declaratory judgment challenges the restrictive covenants, not the existence of the contract between the parties. Because both parties agree that there is an express contract between them, a claim for unjust enrichment is not viable. *See Elia Cos.*, 966 N.W.2d at 764 (stating that breach of contract and unjust enrichment can be pled in the alternative when there is some question of whether an express contract actually existed, but not when there is no dispute as to the existence of the contract). Therefore, the Court will dismiss this claim.

### D. Conversion (Count IV)

Common law conversion is "'any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein.'" *In re B & P Baird*

7

*Holdings, Inc.*, 759 F. App'x 468, 474 (6th Cir. 2019) (quoting *Aroma Wines & Equip., Inc. v. Columbian Distrib. Servs., Inc.*, 871 N.W.2d 136, 141 (Mich. 2015)). "To support an action for conversion of money, the defendant must have an obligation to return the specific money entrusted to his care." *Head v. Phillips Camper Sales & Rental, Inc.*, 593 N.W.2d 595, 603 (Mich. Ct. App. 1999) (citing *Check Reporting Servs., Inc. v. Mich. Nat'l Bank-Lansing*, 478 N.W.2d 893, 900 (Mich. Ct. App. 1991)). The defendant "'must have obtained the money without the owner's consent to the creation of a debtor-creditor relationship.'" *Id.* (quoting *Citizens Ins. Co. of Am. v. Delcamp Truck Ctr., Inc.*, 444 N.W.2d 210, 213 (Mich. Ct. App. 1989)).

In *Lawsuit Financial, L.L.C. v. Curry*, 638 N.W.2d 233 (Mich. Ct. App. 2004), the court found that the "plaintiff failed to state a claim for common-law conversion because it failed to allege that the defendant[]'s initial exercise of domain over the property was in fact wrongful." *Id.* at 240-41. Here, the Employment Agreement did not entitle Hudak to any commission "until [Acrisure] receives payment of such commission from the insurance or product vendor." (Employment Agreement ¶ 5, ECF No. 23-1.) Acrisure's initial exercise of domain over the money was not wrongful, and Hudak does not allege otherwise.

Hudak points to *Citizens Insurance* to argue that conversion occurs simply when "an individual cashes a check and retains the full amount of the check when he is entitled to only a portion of that amount." 444 N.W.2d at 576. In *Citizens Insurance*, the court found that the defendant had converted the plaintiff's money when the plaintiff *paid the defendant* with a check that exceeded the amount the defendant was due, and the defendant refused to return the remainder. Conversion requires that the "defendant must have obtained the money without the owner's consent to the creation of a debtor and creditor relationship." *Id.* at 575. The money was the property of the plaintiff when it wrote a check to the defendant and the defendant was obligated to

8

return the remainder.  Here, Hudak does not allege that he was the owner of the money initially paid to Acrisure by the insurance or product vendor, merely that he was due a commission after its payment to Acrisure.  As indicated above, Hudak does not allege that Acrisure obtained the money without the owner's consent.

Hudak asserts that he was entitled to commission based on Acrisure's contractual duty pursuant to the Employment Agreement and Settlement Agreement.  "A conversion claim 'cannot be brought where the property right alleged to have been converted arises entirely from the [plaintiff's] contractual rights.'" *Llewellyn-Jones v. Metro Prop. Grp., LLC*, 22 F. Supp. 3d 760, 788 (E.D. Mich. 2014) (quoting *James T. Scatuorchio Racing Stable, LLC v. Walmac Stud Mgmt., LLC*, 941 F. Supp. 2d 807, 827 (E.D. Ky. 2013)).  Hudak has not plausibly alleged a claim for common-law conversion as his claim is based on a breach of contract.  *See AKB Wireless, Inc. v. Wireless Toyz Franchise, LLC*, No. 14-13424, 2015 WL 8769964, at *7 (E.D. Mich. Dec. 15, 2015) ("To the extent that AKB is owed commissions under the contract, that claim sounds in contract, not tort [i.e., conversion].").

### E. New York Labor Law (Counts V-VI)

Acrisure seeks to dismiss Hudak's claims under New York state law on the grounds that the Employment Agreement and the Settlement Agreement designate Michigan law as the governing law in any dispute between the parties.  The Employment Agreement states,

> State Law.   The laws of the State of Michigan shall govern this Agreement, excluding choice of law principles.

(Employment Agreement ¶ 18.)  The Settlement Agreement states,

> Applicable Law
>
> This Agreement is entered into in the State of New York.  However, it shall be construed and interpreted in accordance with the laws of the State of Michigan.  All lawsuits related to this Agreement must be brought in the federal or state courts of Michigan. . . .

9

(Settlement Agreement ¶ 9.)

As Hudak argues, a plain reading of both agreements indicates that the parties merely consented to interpreting these agreements under Michigan law. They did not designate Michigan law as the choice of law to govern all disputes or lawsuits. The designation of Michigan courts as the venue for "[a]ll lawsuits related to this Agreement," demonstrates that the parties understood this distinction. (*Id.*) While any interpretation of the Agreements must be done under Michigan law, the Agreements do not preclude Hudak from bringing claims that Acrisure violated New York labor laws.

### F.  Declaratory Judgment (Count VII-VIII)

Counts VII and VIII of Hudak's Counterclaim seek declaratory relief. The Declaratory Judgment Act, 28 U.S.C. § 2201, does not provide an independent cause of action. *Davis v. United States*, 499 F.3d 590, 594 (6th Cir. 2007) (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950)). A declaratory judgment is a remedy, not an independent claim. *See, e.g.*, *Cruz v. Capital One, N.A.*, 192 F. Supp. 3d 832, 838 (E.D. Mich. 2016).

Acrisure argues that these counts should be dismissed because Hudak fails to state a claim for any independent cause of action and declaratory relief cannot be pled alone. However, because the Court has found that Hudak has sufficiently pled a claim for breach of contract, the Court will construe Counts VII and VIII as requests for relief rather than independent causes of action.

## IV. CONCLUSION

For the reasons stated, the Court will grant in part and deny in part Acrisure's motion to dismiss. The motion will be granted as to the dismissal of Counts II, III, and IV, and denied as to the rest. An order will enter consistent with this Opinion.

Dated: August 1, 2022                                /s/ Hala Y. Jarbou
                                                     HALA Y. JARBOU
                                                     CHIEF UNITED STATES DISTRICT JUDGE